**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| TOM DOSHI, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 23-3613 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 8, 10 |
| | : | | |
| ANTONY BLINKEN, Secretary of State, in his | : | | |
| Official Capacity, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS, DENYING WITHOUT PREJUDICE**

**PLAINTIFFS' MOTION FOR PARTIAL DEFAULT AND PARTIAL SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Tom Doshi is an Albanian businessman and former Member of the Albanian Parliament.

In April 2018, the United States Department of State designated Doshi under Section 7031(c) of

the Consolidated Appropriations Act of 2017, rendering him and members of his family

ineligible to enter the United States.  The State Department announced that it designated Doshi

due to his involvement in significant corruption.  Doshi and his family members filed this lawsuit

challenging the State Department's decision under the Administrative Procedure Act ("APA")

and the Due Process Clause of the Fifth Amendment.  Plaintiffs additionally seek materials

related to the designation under the Freedom of Information Act ("FOIA").

Defendants move to dismiss the APA and due process claims, and Plaintiffs seek default

and partial summary judgment on their FOIA claims.  The Court determines that Plaintiffs' APA

claims are nonjusticiable under the doctrine of consular nonreviewability, and that Plaintiffs

cannot avail themselves of the Fifth Amendment Due Process clause.  The Court additionally

concludes that Defendants have not defaulted on the FOIA claim.  Finally, because the Government has started producing documents responsive to Plaintiffs' FOIA request, summary judgment on that issue is premature.  The Court will thus **GRANT** Defendants' partial motion to dismiss and **DENY** without prejudice Plaintiffs' motion for partial default and partial summary judgment.

## II.  FACTUAL BACKGROUND

### A.  Statutory Background

Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2023 (Pub. L. No. 117-328, § 7031(c)(1)(A), 136 Stat. 5026 (2023)), as carried forward by the Continuing Appropriations Act, 2024 (Pub. L. No. 118-15, § 101(11), 137 Stat. 73 (2024)) ("Section 7031(c)," codified at 8 U.S.C. § 1182, statutory note) provides that "[o]fficials of foreign governments and their immediate family members" about whom the Secretary of State "has credible information have been involved" in "significant corruption" or "a gross violation of human rights" "shall be ineligible for entry into the United States."[1]  Pub. L. No. 117-328, § 7031(c)(1)(A), 136 Stat. 5026 (2023); *see also* 8 U.S.C. § 1182, statutory note. An individual designated under Section 7031(c) is generally ineligible for a visa and admission into the United States, with narrow exceptions.  Pub. L. No. 117-328, § 7031(c)(1)(A), (c)(2)– (3), 136 Stat. 5026 (2023); *see also* 8 U.S.C. § 1182, statutory note.

---

[1] Congress initially authorized Section 7031(c) in Section 699L of the Fiscal Year 2008 annual appropriations act, requiring the Secretary to "compile and maintain a list of" designated officials.  Department of State, Foreign Operations, and Related Programs Appropriations Act, 2008, Pub. L. No. 110-161, div. J, tit. VI, § 699L, 121 Stat. 1844, 2373–74 (2007).  A version of this provision has been passed in every subsequent annual appropriations act for the Department of State.

**B.  Factual Background**

Tom Doshi is an Albanian national who owns an Albanian pharmaceutical manufacturing company and was a Member of Parliament at the time of his designation.  Compl. ¶ 26, ECF No. 1.  Plaintiffs Xhovana, Briana, James, Marcos, and Luis Doshi are Australian citizens and members of Doshi's family.  *Id.* ¶ 29.  On April 16, 2018, the State Department announced that it was publicly designating Doshi and his immediate family members under Section 7031(c) "due to his involvement in significant corruption."  *Id.* ¶ 32.  The State Department provided no further information on its reasoning and did not explain the designation in its public annual report mandated under Section 7031(c)(5).  *Id.* ¶¶ 32, 35.

Doshi alleges that State Department officials repeatedly cited his designation in statements encouraging the Albanian public to vote against him in parliamentary elections.  *Id.* ¶ 33.  Doshi has since engaged with officials at the U.S. Embassy in Albania, hoping to obtain information about the factual basis for his designation.  *Id.* ¶ 36.  In March of 2021, Doshi agreed to resign from his position in the Albanian Parliament in exchange for the State Department's reconsideration of his Section 7031(c) designation and with the understanding that the agency would no longer publicly criticize him.  *Id.* ¶ 37.  Despite this alleged agreement, the State Department did not waive its designation and declined to further engage with Doshi.  *Id.* ¶ 38– 40.

In February 2022, Doshi submitted a FOIA request seeking records related to his designation under Section 7031(c).  *Id.* ¶ 41.  The State Department acknowledged the request and assigned a reference number.  *Id.* ¶ 42.  At the time Plaintiffs filed the Complaint in December 2023, the agency had not produced any records.  *Id.* ¶ 43–44.  On March 29, 2024, the State Department made an initial production of records in response to Plaintiffs' FOIA request.

Defs.' Reply Mem. Partial Mot. Dismiss ("Defs.' Reply") at 1, ECF No. 14.  The production included 23 records released in part, with four other records withheld in their entirety.  Ex. A to Defs.' Reply, ECF No. 14-1.  As of early April 2024, the State Department planned to continue rolling productions every six weeks.  Defs.' Reply at 1.

Plaintiffs filed this lawsuit on December 5, 2023.  *See* Compl.  The State Department filed a partial motion to dismiss on January 12, 2024, ECF No. 8, and Plaintiffs moved for summary judgment on February 5, 2024, ECF No. 10.

### III.  LEGAL STANDARD

#### A.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim or complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344–45 (D.C. Cir. 2018).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  But a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal*, 16 F.3d at 1276) (brackets omitted).

Thus, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.*  Similarly, there is no obligation to accept a plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  Also, the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)).

Moreover, while justiciability issues are often decided as jurisdictional questions under Rule 12(b)(1), "certain justiciability questions are governed by Rule 12(b)(6), rather than Rule 12(b)(1)[.]"  *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 332 n.9 (D.D.C. 2016) (citations omitted), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017) (citing *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011)).  The D.C. Circuit has acknowledged that it "ha[s] not always been consistent in maintaining the distinction between a claim that is not justiciable . . . and a claim over which the court lacks subject matter jurisdiction."  *Id.* (quoting *Sierra Club*, 648 F.3d at 853) (internal quotation marks omitted).  Most relevantly here, while the D.C. Circuit previously used the word "jurisdiction" when describing the doctrine of consular nonreviewability, it has more recently clarified that doctrine is not jurisdictional and thus falls under the ambit of Rule 12(b)(6).  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028 (D.C. Cir. 2021).

### B.  Summary Judgment

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S.

164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  It "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)).  "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  "The agency bears the burden of establishing that a claimed exemption applies."  *Citizens for Resp. & Ethics in Washington ("CREW") v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citing *Dep't of Just. V. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 755 (D.C. Cir. 2014)).

Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment."  *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence."  *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure.'"  *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

Even if a FOIA exemption applies, an agency cannot withhold information unless it also "reasonably foresees that disclosure would harm an interest protected by" the exemption.  5

U.S.C. § 552(a)(8)(A)(i)(I); *see Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024)

("Even if an exemption covers an entire agency record, the agency still must release any

reasonably segregable information within the record that could be disclosed without causing

reasonably foreseeable harm to an interest that the exemption protects."); *Reps. Comm. for*

*Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA

Improvement Act of 2016's "foreseeable harm" requirement).

### IV.  ANALYSIS

The Court proceeds through its analysis in four parts.  The Court first addresses whether

Plaintiffs may challenge the Section 7031(c) designation under the APA, concluding that the

issue is nonjusticiable.  The Court then considers Plaintiffs' due process claim and determines

that the complaint alleges no facts indicating that they may avail themselves of the Due Process

Clause.  After noting that Plaintiffs' request for mandamus relief fails, the Court examines the

status of their FOIA claim and determines that summary judgment is premature given the

Government's ongoing productions.

### A.  Justiciability of the Section 7031(c) Designation Under the APA

Plaintiffs claim that the State Department's decision to designate Doshi under Section

7031(c) violates the APA because it was arbitrary and capricious, ultra vires, and failed to

comply with the APA's notice requirements.  Compl. ¶¶ 45–62.  The State Department argues

that its decision to designate Doshi is nonjusticiable, Defs.' Partial Mot. Dismiss ("Defs.' Mot.")

at 7–18, ECF No. 8-1, and alternatively that the decision is committed to agency discretion by

law under 5 U.S.C. § 701(a)(2), *id.* at 19–20.  Plaintiffs respond that Courts regularly review

decisions regarding the admission of aliens, Pls.' Opp'n Partial Mot. Dismiss ("Pls.' Opp'n") at

7–10, ECF No. 12, that the statute at issue is analogous to reviewable sanctions designations, *id.*

at 13–15, and that an *ex-ante* decision under Section 7031(c) is not akin to a final visa adjudication subject to consular non-reviewability, *id.* at 22–24.  The Court agrees with the State Department that its Section 7031(c) designation is nonjusticiable.

Federal courts have long held that the particularized decision to grant or deny a noncitizen entry to the United States is a political question.  *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases 'have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"); *Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."); *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972) ("We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).  Just last month, the Supreme Court reaffirmed that "Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'"  *Dep't of State v. Muñoz*, 144 S. Ct. 1812, 1820 (2024) (quoting *Harisiades*, 342 U.S. at 588–91); *see also Colindres v. U.S. Dep't of State*, 71 F.4th 1018, 1019 (D.C. Cir. 2023); *Baan Rao* , 985 F.3d at 1024; *Kiyemba v. Obama*, 555 F.3d 1022, 1025 (D.C. Cir. 2009) ("[T]he Court has, without exception, sustained the exclusive power of the political branches to decide which aliens may, and which aliens may not, enter the United States, and on what terms."); *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1157–62 (D.C. Cir. 1999).

Courts defer to the other branches on "decisions in these matters" because they "may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances." *Mathews*, 426 U.S. at 81. Consular nonreviewability applies to the Government's "particular determination in a particular case" to exclude or deny a visa to a certain individual. *Int'l Union of Bricklayers & Allied Craftsmen v. Meese III*, 761 F.2d 798, 801 (D.C. Cir. 1985). As such, it does not bar challenges to the Government's broader immigration policies, as the judiciary may act "to assure that the executive departments abide by the legislatively mandated procedures." *Id.* at 801; *see also Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 232 (D.D.C. 2021) (distinguishing challenges to "general policies" from those targeting "an individual visa determination").

There are two limited exceptions to consular nonreviewability. "The first exception applies when 'a statute expressly authorizes judicial review.'" *Colindres*, 71 F.4th at 1021 (quoting *Baan Rao*, 985 F.3d at 1025). That exception is not at issue here because Plaintiffs point to no statute "expressly authoriz[ing]" this Court to review the State Department's decision. To the contrary, Congress has generally declined to authorize judicial review of visa denials. *See* 6 U.S.C. § 236(f) ("Nothing in this section shall be construed to create or authorize a private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."). "The second exception lets 'an American citizen . . . challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights.'" *Colindres*, 71 F.4th at 1021 (quoting *Baan Rao*, 985 F.3d at 1024); *see also Muñoz*, 144 S. Ct. at 1814. On the face of the Complaint, it does not appear that any plaintiff is a United States citizen.

Defendants rely on two decisions concluding that Section 7031(c) designations are generally nonjusticiable based on the doctrine of consular nonreviewability.  *See Bautista-Rosario v. Mnuchin*, 568 F. Supp. 3d 1 (D.D.C. 2021); *Sealed v. Pompeo*, No. 20-cv-1087 (E.D.N.Y. Jul. 22, 2022), Mem. Op. and Order, Ex. B to Defs.' Reply, ECF No. 14-2 (the "*Sealed Case*").  In *Bautista-Rosario v. Mnuchin*, the Court reasoned that Congress has barred judicial review of visa denials and revocations.  568 F. Supp. 3d 1, 6 (citing 6 U.S.C. § 236(f); 8 U.S.C. § 1201(i)).  Although there is a presumption of judicial review under the APA, the Court observed that "the statutory scheme and the nature of the administrative action" along with the "well-established" "non-reviewability of alien exclusion determinations" precludes APA review. *Id.* at 6–7.  The *Sealed Case* relied on similar logic.  *See* Ex. B to Defs.' Reply at 3–6.

This Court recently issued an additional decision adopting the reasoning in those opinions.  *See Rahmani v. Yellen*, No. 24-cv-285, 2024 WL 1701681, at *14–16 (D.D.C. Apr. 19, 2024).  In *Rahmani*, the Court stated that it

> finds the reasoning in *Bautista-Rosario* and the *Sealed Case* to be persuasive, and adopts it here.  Because "Congress has expressly prohibited judicial review of visa denials and revocations," *Bautista-Rosario*, 568 F. Supp. 3d at 7, and a Section 7031(c) designation has essentially the same effect but is issued at a higher level, the Court concludes that Section 7031(c) designations are not subject to judicial review.

*Id.* at *15.

The Court finds these cases persuasive.  When designating an individual under Section 7031(c), the political branches "decide which aliens may, and which aliens may not, enter the United States, and on what terms."  *Kiyemba*, 555 F.3d at 1025.  Although courts have often characterized the doctrine in the context of consular officials' decisions, *see Colindres*, 71 F.4th at 1019, the same separation-of-powers principles apply when the Secretary of State opts to

exclude a noncitizen under Section 7031(c).  Plaintiffs' challenge to their Section 7031(c) designation is therefore a political question that this Court cannot review through the APA.

Plaintiffs' arguments to the contrary are unpersuasive.  Plaintiffs cite numerous cases in which they contend courts have reviewed decisions regarding the admission of aliens.  *See* Pls.' Opp'n at 7–10.  Yet in none of those instances did a federal court review a particularized decision to exclude an individual noncitizen.  Many of those cases considered challenges to the executive branch's broader policies rather than exclusion of an individual.  *See, e.g.*, *Trump v. Hawaii*, 585 U.S. 667 (2018) (considering policy barring individuals arriving from certain countries); *Mass. Coal. for Immigr. Reform v. U.S. Dep't of Homeland Sec.*, 621 F. Supp. 3d 84 (D.D.C. 2022) (examining environmental challenge to immigration policies); *Filazapovich*, 560 F. Supp. 3d at 232 ("Plaintiffs have challenged the State Department's general policies . . . not an individual visa determination."); *Tate v. Pompeo*, 513 F. Supp. 3d 132 (D.D.C. 2021) (considering policies related to processing of certain visas).  Plaintiffs cite other cases that did not involve visas or entry of noncitizens.  *See, e.g.*, *Sale v. Haitian Ctrs.s Council, Inc.*, 509 U.S. 155 (1993) (reviewing policy's compliance with nonrefoulement obligations); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) (considering termination of DACA).  The cases thus reveal no judicial practice of interfering with the Government's prerogative to grant or deny a particular alien entry to this country.

Plaintiffs additionally contend that a Section 7031(c) designation is "more analogous" to imposition of sanctions than a visa determination, and that courts regularly review challenges to sanctions designations.  Pls.' Opp'n at 13–15.  Plaintiffs provide no reason why a court should equate Section 7031(c)'s bar on entry to the United States with sanctions' financial and property restrictions, and the analogy is not apparent to the Court.  Whereas Section 7031(c) empowers

the Secretary of State to render an individual "ineligible for entry into the United States,"
§ 7031(c)(1), "sanctions imposed under IEEPA, the Global Magnitsky Act, and the Kingpin
Act," to which Plaintiffs cite, "are all accompanied by blocking sanctions."  Defs.' Reply at 14.
Those blocking sanctions do not implicate an individual's right to enter the United States, and
that is the reason the consular nonreviewability doctrine is inapplicable in those contexts.

Finally, Plaintiffs argue that the consular nonreviewability doctrine is inapplicable here
because the Secretary of State's designation is not a final visa adjudication by a consular officer.
Pls.' Opp'n at 22–25.  In support of this position, Plaintiffs cite several cases explaining that the
doctrine does not apply until an official has made a final decision regarding the alien's
admissibility.  For instance, courts may entertain lawsuits in some circumstances where the
Government fails to timely adjudicate visa applications.  *See id.* at 22 (citing *Nine Iraqi Allies*
*Under Serious Threat Because of Their Faithful Serv. to the U.S.v. Kerry*, 168 F. Supp. 3d 268,
290 (D.D.C. 2016)).[2]  Yet the Government has made its decision here, reaching an "*ex ante*
decision about the visa eligibility of a particular foreign national," an act that is "plainly akin to a
visa eligibility determination that would be made by a consular officer."  Defs.' Reply at 17.
That decision is final because "the agency has completed its decisionmaking process" regarding
an individual's eligibility to enter the United States, and the result has immediate legal effect.

_____

[2] The D.C. Circuit recently issued two opinions involving delayed adjudication of visa
applications, although the Government declined to raise the doctrine of consular non-
reviewability in either case.  *See Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 818 n.4 (D.C.
Cir. 2024) (approving of district court's injunction requiring Government to timely adjudicate
special immigrant visas); *Goodluck v. Biden*, 104 F.4th 920, 926, n.3 (D.C. Cir. 2024) (reversing
district courts' injunctions requiring Government to issue diversity visas after statutory cutoff
dates).

*Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).  Furthermore, contrary to Plaintiffs'

assertions, Pls.' Opp'n at 22, applicability of the consular nonreviewability doctrine does not

hinge on the title of the official rendering the decision.  Rather, the key question is whether "an

*executive officer*" has decided "to admit or to exclude an alien," in which case the decision is

"final and conclusive."  *Muñoz*, 144 S. Ct. at 1820 (emphasis added); *see also Doan v. INS*, 160

F.3d 508, 509 (8th Cir. 1998) (concluding that an Immigration and Naturalization Service

official's decision was subject to consular nonreviewability); *see also* 6 U.S.C. § 236(f)

(equating "a consular officer" with any "other United States official or employee").  An

executive officer has made use of that power here, and this Court may not review that

discretionary act.[3]  As such, Plaintiffs' APA challenges must be dismissed.[4]

### B.  Applicability of the Due Process Clause

Plaintiffs additionally claim that the State Department has deprived them of a liberty

interest without due process in violation of the Fifth Amendment.  Compl. ¶¶ 63–66.  They assert

that the "designations were imposed without advance notice and an opportunity to be heard" to

"refute the basis for the designations."  *Id.* ¶ 66.  The State Department contends that Plaintiffs

lack sufficient contacts with the United States to claim protections under the Fifth Amendment

Due Process Clause.  Defs.' Mot. at 20–22.  In the alternative, the State Department argues that

---

[3] Plaintiffs argue that the Court should deny Defendants' motion to dismiss the APA claims because the State Department, in their view, has not complied with its obligations under Section 7031(c)(4) to report certain relevant information to Congress.  Pls.' Opp'n at 39–42. Defendants assert that the State Department issued a public report as required by Section 7031(c)(5), and that Plaintiffs lack standing to demand additional information.  Defs.' Reply at 20.  To the extent that Plaintiffs challenge their designation under the statute by alleging procedural infirmities, they simply continue to challenge the Government's decision to deny them entry to the United States.  That attempt fails for the reasons articulated in this section.

[4] Because the Court determines that Plaintiffs' APA claims present a nonjusticiable political question, it need not address Defendants' argument that the decision is committed to agency discretion by law under 5 U.S.C. § 701(a)(2).  *See* Defs.' Mot. at 19–20.

Plaintiffs have not been deprived of a protected life, liberty, or property interest. *Id.* at 23–24. Plaintiffs assert that they have due process rights regardless of their contacts with the United States, Pls.' Opp'n at 36–37, and that they have liberty and property interests because they have suffered harm, *id.* at 37–39. The Court concludes that Plaintiffs have failed to allege facts showing that they may avail themselves of the Due Process Clause.

"[I]t is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency Int'l Dev. v. All. Open Soc'y Int'l, Inc.*, 591 U.S. 430, 434 (2020). "Aliens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country." *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990)). At present, "[t]he D.C. Circuit has no test to determine what degree of connection to the United States counts as 'substantial.'" *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 77 (D.D.C. 2020); *see also Bautista-Rosario*, 568 F. Supp. 3d at 7. Yet it is clear that "[a] foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise." *People's Mojahedin*, 182 F.3d at 22.

Plaintiffs do not allege that they are present in the United States, were present at the time the State Department designated them under Section 7031(c), or have any other connection to the United States. *See generally* Compl. Plaintiffs allege that Mr. Doshi is an Albanian businessman, and that the remaining family members are Australian. Compl. ¶¶ 26, 29. The fact that they challenge a decision barring them from the United States "suggest[s] that they are all currently abroad." *Bautista-Rosario*, 568 F. Supp. 3d at 7. Plaintiffs argue, however, that Doshi has the requisite connections with the United States because "in 2014, Mr. Doshi was invited to

attend an American Israel Public Affairs Committee ('AIPAC') conference in the United States."
Pls.' Opp'n at 37 n.7.  First, "plaintiffs may not amend their complaints through briefs in
opposition to motions to dismiss."  *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d
105, 119 n.4 (D.D.C. 2018).  Second, the fact that Doshi was "invited to attend" a conference in
2014 does not mean that he actually attended the event.  Third, even if Doshi did in fact attend
the conference, a single visit to the United States a decade ago, or unspecified "visits" that were
"few in number," Pls.' Opp'n at 37 n.7, do not suffice to establish a presence in this country or a
substantial connection to it.  *See 32 Cnty. Sovereignty Comm. v. Dep't of State*, 292 F.3d 797,
799 (D.C. Cir. 2002) (holding that an entity with "neither a property interest nor a presence in
this country" lacks the protections of the Due Process Clause); *Bautista-Rosario*, 568 F. Supp. 3d
at 7 (discounting "[p]laintiffs' presence-related allegations" that "all appear to have been in the
past").  Plaintiffs similarly allege no facts indicating that they own property interests within the
United States.  *See generally* Compl.[5]

Plaintiffs argue that the Court should nonetheless proceed to consider whether the
Government violated their due process rights, citing one decision that did so "given the lack of
clarity surrounding" the plaintiff's "entitle[ment] to constitutional protections."  *Olenga v. Gacki*,
507 F. Supp. 3d 260, 275 (D.D.C. 2020); *see also* Pls.' Opp'n at 36.  Yet in that sanctions-related
case, the plaintiff alleged that his property interests in the United States were blocked without
specifying what the property entailed.  *Olenga*, 507 F. Supp. 3d at 274.  No such ambiguity

---

[5] Doshi asserts that "[c]ases addressing specific personal jurisdiction are instructive on
the" requisite level of connection to assert Fifth Amendment due process rights.  Pls.' Opp'n at
37 n.7.  Whether a defendant's contacts with the forum meet the requirements of the Due Process
Clause has no bearing, however, on whether a plaintiff may avail himself of the Due Process
Clause to begin with.

exists here, where Plaintiffs do not claim to own any property in the United States or maintain any presence here.

Because Plaintiffs have not alleged facts demonstrating a substantial connection to the United States, they do not show entitlement to Fifth Amendment protections, and their Due Process claim must fail. Accordingly, the Court does not reach the question of whether Plaintiffs sufficiently alleged deprivation of a liberty interest.

### C.  Mandamus Relief

Plaintiffs additionally seek mandamus to compel the State Department "to waive the Section 7031(c) designations on the Plaintiffs." Compl. ¶ 70. "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004) (discussing prerequisites for issuance of the common-law writ). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'" *Power*, 292 F.3d at 784 (quoting *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (D.C. Cir. 1997)). A court may "analyze the clear right to relief and clear duty to act requirements for mandamus concurrently, and the question becomes whether [Plaintiffs] have demonstrated a clear and indisputable right to relief based on a clear and compelling duty to act." *Illinois v. Ferriero*, 60 F.4th 704, 715 (D.C. Cir. 2023) (cleaned up). The Court has concluded that Plaintiffs' APA claim is nonjusticiable and that they are not entitled to the protections of the Fifth Amendment Due Process Clause. As a result, the Department of State has no clear duty to waive Plaintiffs' Section 7031(c)

designations, and Plaintiffs lack a clear right to relief.  The request for mandamus relief is denied.

### D.  FOIA Claim

In addition to their claims seeking relief from the Section 7031(c) designation, Plaintiffs pursue State Department records that shed light on the agency's decision.  As the State Department's motion to dismiss addresses only Counts One through Five, Plaintiffs seek a default judgment on Count Six, which requests "injunctive relief with respect to the release and disclosure of the requested records" under FOIA.  Compl. ¶ 74; *see also* Pls.' Mot. Partial Default and Partial Summ. J. ("Pls.' Mot.") at 10–15, ECF No. 10-1.  Plaintiffs additionally seek summary judgment on the FOIA claim.  *See id.* at 7–10.

#### 1.  Default

Plaintiffs argue that by filing a partial motion to dismiss addressing only Counts One through Five, and not filing an answer addressing Count Six, that Defendants have defaulted on Count Six.  *Id.* at 10.  The State Department contends that its obligation to respond to Count Six is stayed pending resolution of this partial motion to dismiss.  *See* Dfs.' Opp'n Mot. Partial Default and Partial Summ. J. ("Defs.' Opp'n") at 6–11, ECF No. 11-1.

Absent waiver of service, Rule 12 generally requires a defendant to "serve an answer within 21 days after being served with the summons and complaint."  Fed. R. Civ. P. 12(a)(1)(A).  A United States agency must typically answer "within 60 days."  Fed. R. Civ. P. 12(a)(2).  When a complaint contains a FOIA claim, a statute requires the Government to "answer or otherwise plead" within 30 days.  5 U.S.C. § 552(a)(4)(C).  "[S]erving a motion" under Rule 12, however, renders the responsive pleading due "14 days after notice of the court's action" on that motion.  Fed. R. Civ. P. 12(a)(4)(A).

According to one view, which Plaintiffs naturally espouse, courts should consider separate counts as "independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under" Rule 12.  *Gerlach v. Michigan Bell Tel. Co.*, 448 F. Supp. 1168, 1174 (E.D. Mich. 1978).  The text of Rule 12 provides at least a modicum of support for this view.  The rule states that the responsive pleading is due 14 days after notice of the court's action, but only "if the court *denies* the motion or *postpones* its disposition until trial."  Fed. R. Civ. P. 12(a)(4)(A) (emphasis added).  The rule could be read to mean that no further pleading is necessary in the event the court *grants* the motion to dismiss.  Under this construction, either (1) a motion to dismiss will address all claims in the action or (2) in the case of a partial motion to dismiss, each claim must be treated separately in Rule 12 analysis.  In that case, a party must answer or otherwise respond to each count in a timely fashion.

The other view, which Defendants advance, is that a Rule 12 motion suspends a party's obligation to file an answer, including one addressing remaining claims.  This reading has a stronger basis in the rule's text, given that "serving a motion" is the event that triggers alteration of the deadline to "serve an answer."  Fed. R. Civ. P. 12(a).  In addition, Rule 12(a)(4) alters the defendant's deadline to "serve an answer," not to answer specific claims.  The rule acknowledges the difference between a pleading and an individual claim, rendering it unlikely that by "answer," the rule really means "answer to each claim."  *See* Fed R. Civ. P. 12(b); *see also* Fed. R. Civ. P. 10 (referring to "pleading" and "claim" separately).  Taking this approach brings greater order to litigation by obviating the need for "duplicative sets of pleadings in the event that the Rule 12(b) motion is denied," and it avoids "confusion over the proper scope of discovery during the motion's pendency."  5 Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 1346 (4th ed. 2024).  Indeed, it is the majority view that when a party

files a "partial motion to dismiss," the motion "suspends the time by which [the party] must

respond to the entirety of the [c]omplaint pursuant to Rule 12(a)."  *Betz v. First Credit Servs.,*

*Inc.*, 139 F. Supp. 3d 451, 456 n.4 (D.D.C. 2015); *see also* Defs.' Opp'n at 7–8 (collecting

cases); Wright & Miller § 1346; *Smith v. Gen. Motors, LLC*, No. 4:23-cv-379, 2023 WL

4849442, at *1 (N.D. Tex. July 7, 2023); *B.H.T. v. Sumner Cnty. Bd. of Educ.*, No. 3:20-cv-732,

2020 WL 12630642, at *2 (M.D. Tenn. Dec. 30, 2020); *Dotson v. DISH Network, L.L.C.*, No.

2:19-cv-21, 2019 WL 3483806, at *3 (S.D. Ga. July 31, 2019) (collecting cases); *Godlewski v.*

*Affiliated Comput. Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002); *Phoenix v. Wormuth*, No.

23-5130, 2023 WL 9660884, at *4 (6th Cir. Nov. 13, 2023).

      The Court finds the majority rule compelling and sees no need to deviate from it here.[6]

Because Defendants filed a timely motion to dismiss at least some of the claims in this action, its

---

[6] Plaintiffs additionally note that FOIA requires a federal agency to "serve an answer or otherwise plead to any complaint made under this subsection within thirty days after service upon the defendant of the pleading in which such complaint is made."  5 U.S.C. § 552(a)(4)(C); *see also* Pls.' Mot. at 10–12.  The Government argues that its motion to dismiss, filed within the required timeframe, satisfies the statute.  *See* Defs.' Opp'n at 3.  In Defendants' favor, it is not apparent that default represents the remedy for failure to comply with the provision.  In Plaintiffs' favor, it is not clear whether a Rule 12 motion serves as a "plead[ing]" under § 552(a)(4)(C), as a motion is generally not considered a pleading.  *See* Fed. R. Civ. P. 7(a) (listing allowed pleadings and differentiating them from motions); Fed. R. Civ. P. 12 (a)(4) (differentiating "a motion under this rule" from "the responsive pleading"); *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 283 (D.C. Cir. 2000) ("[A] motion to dismiss is not a responsive pleading for the purposes of Rule 15."); Pleading, Black's Law Dictionary (11th ed. 2019) ("In federal civil procedure, the main pleadings are the plaintiff's complaint and the defendant's answer.").  On the other hand, Congress may have intended "or otherwise plead" to include motions, as the language is otherwise surplusage.  *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006) ("[I]t is generally presumed that statutes do not contain surplusage.").  The Court need not decide this issue, however.  To the extent the statute did require the State Department to respond specifically to the FOIA claim within 30 days, the Court finds "good cause" for any delay given the pendency of Defendants' motion to dismiss Counts One through Five.  5 U.S.C. § 552(a)(4)(C).

time to respond to the remaining claims is governed by Rule 12(a)(4) and runs from the date of the Court's action on this motion.  As such, there is no cause for entry of default against Defendants.

## 2. Summary Judgment

Plaintiffs additionally seek entry of summary judgment against Defendants given a delay of "nearly two years" since submission of the FOIA request.  Pls.' Mot. at 14.  Since Plaintiffs filed their motion, however, the State Department has started producing documents.  As Plaintiffs acknowledge, in late March 2024 the agency released 169 pages with partial redactions from 23 separate records.  Pls.' Sur-reply to Mot. Dismiss ("Pls.' Sur-reply") at 5, ECF No. 16; *see also* Defs.' Reply at 6.  Plaintiffs attach an April 12, 2024, email from the State Department's counsel asserting that the agency had identified 5,487 records related to the request, and that additional State Department components continued to search for documents.  Ex. A to Pls.' Sur-reply at 2, ECF No. 16-1.  Defendants asserted that production would continue every six weeks on a rolling basis.  Defs.' Reply at 1.

Plaintiffs demand that the State Department at least define the scope of documents it plans to produce.  Pls.' Reply Opp'n Mot. Summ. J. at 3–6, ECF No. 13.  As of April 12, 2024, the agency was "reviewing and processing the search results and producing responsive, non-exempt records to Mr. Doshi on a rolling basis," and the number of documents subject to review renders this FOIA request particularly burdensome.  Ex. A to Pls.' Sur-reply at 3.  The Court's intervention at this stage would be premature.  "[T]he agency may continue to process [Plaintiffs'] request," but "the [C]ourt . . . will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013).

Plaintiffs' motion for partial summary judgment is therefore denied without prejudice, and the Court will instruct the parties to submit status reports at regular intervals.

## V.  CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is **GRANTED**, and Plaintiffs' partial motion for default and summary judgment is **DENIED** without prejudice.  It is **FURTHER ORDERED** that the parties shall submit a joint status report on or before August 21, 2024, detailing the status of the State Department's review and release of responsive documents, as well as plans for further production.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 22, 2024                                              RUDOLPH CONTRERAS
                                                                                United States District Judge